HAKO-MED, et al. v. AXIOM, et al. 2011-10-81, Mr. Rappel. Rappel or Appel? Rappel, it's Rappel. You have the luxury of no opponent. Second time around, Your Honor. May it please the Court. The appellants HAKO-MED USA, HAKO-MED GMBH, and Achim Hansjörgens submit to the Court that the issue before this Court is whether the District Court of Hawaii had improperly wielded the sword of res judicata and slew my client's second cause of action against not only this defendant but other defendants with respect to the 552 patent under the doctrine of equivalence. In this case, originally the case first time around was filed in the United States District Court for the Middle District of Florida in Case 06-CV-1790. In that case, the jury returned a verdict in favor of my client's with respect to infringement on the 552 patent against the Axiom Worldwide, Inc. At that time, there was not a party to the cause of action known as Axiom Worldwide, LLC. In that case, at the end, at the close of the case, Axiom Worldwide, Inc. had moved for judgment as a matter of law post-verdict, which the Court for the Middle District of Florida had affirmed. And then we took this case, that decision before this Court, in Case 10-1421, which was heard in oral arguments, and a non-precedential opinion by this Court was rendered in February of this year, in which it declared, obviously, affirming the judgment as a matter of law. Our position before the District Court of Hawaii was we had 30 defendants listed, as well as John Doe defendants. With respect to the part of the claim, under Gilligan, maybe you're right that res judicata doesn't apply because this was an after arising product and there was no movement to amend the complaint to state that. Fair enough. But your problem is that collateral estoppel still applies because there's a determination that the original product was non-infringing, and there's a final judgment with respect to that now. So why doesn't that defeat your claim here? Maybe the District Court used the wrong terminology, but it's the same result. Well, the District Court of Hawaii did then move to the second issue that Your Honor has raised with respect to the collateral estoppel issue and applied in the Ninth Circuit case law. But if the Court goes back and looks at when HACOMED won, when the record was before the Court, and if not, I'll be glad to supplement it. But at the close of the jury trial case, there was an oral tennis application made for an injunction with respect to the original infringing device. And it was only to devices manufactured up to and including November of 2006. So first, this device, these devices were after November of 2006. Secondly, with the issue before the Court. No, I understand that. Because the next issue would be was what was the issues that were litigated at that time. There was only limitation C within the 552 patent, Your Honor, and it was only with respect to the insynchronism issue and what the meaning of the insynchronism was. There was no dispute about the corner frequencies. Yeah, but how could it be that this design-around product infringes the original product didn't do? Well, because the Court even addressed that in the read factors when we went into the enhancement stage and moved for enhancement. And the Court gave them the seventh read factor by saying you undertook remedial measures and you redesigned around the device, so we're going to give that to you. So, I mean, our argument is almost this reverse judicial estoppel in the sense that they would not be able to make that argument had we prevailed in HACOMED 1, which is what Judge Ezra said, well, one of my other issues, and, of course, I'll concede that Count 2 is no longer viable based on the decision. But he said you can always go back to the Middle District of Florida for contempt proceedings. And, of course, our position would have been had that occurred, had this Court reversed the JMOL and we were back in that position, we were not going back to Hawaii, according to Judge Ezra, it would be a second issue before this Court, which is that you can go for contempt. And we would be arguing how could we go for contempt when you gave them read factors in their favor and denied enhancement at the time. So... Wasn't there a finding by the District Court in Hawaii that the two products are nearly identical? Well, he took what we said out of context because we were at oral argument and we felt in one of our positions, of course, that we were blindsided because the Court never really made any oral inquiry at oral arguments. It was basically you, Mr. Rappelle, you would think that the other side would argue the record. And, of course, I mean, it was speculation, conjecture, not sure what they're going to argue. But our position at the time was that Dr. Hans-Juergens in his affidavit, he said, well, gee, your client said the same mechanism. And our position would be no, the Court misconstrued what Dr. Hans-Juergens was saying. The mechanism is the apparatus is the patent itself. And, of course, looking at Column 7, Lines 3 through 8, sets up the variables of what one needs in order for the patent to first work. And as we also pointed out later in Column 7, when we talk about the corner frequencies, it's important to have exact corner frequencies. Otherwise, you may miss the mark. And Dr. Hans-Juergens in the 552 patent has a specific number. There is a specified number listed at starting at 1,000 hertz to several thousand hertz. And, again, our position would have been is that not necessarily below 1,000 hertz you may or may not get horizontal therapy. There are other variables that have to arise at the time. And so, of course, that's our position to say that, well, there's no significant changes. It's non-colorable. When we said, well, wait a minute, the patent talks about what is required within the corner frequencies to make it work. And Figure 2 shows this at points P23 and P24. You can see within the figures that you may not necessarily get horizontal therapy, depending on where you are within the corner frequencies. Mr. President, the claim language, it speaks to the modulation interval of 1,000 to several thousand mHz? That's correct. It says 1,000. That's claim limitation C, which, well, I call it limitation C because that's what the Middle District of Florida called it during claims construction. That's correct. And, again, as we said, we were in order to generate in synchronism, which was later also within limitation C, but a different phrase of limitation C. So, again, our position was this was not collateral estoppel, completely different issues. They announced that we were limited because they made changes to the device, and they were given that as credit, even though we eventually had the case reversed. For enhancement purposes, they were given that credit. So we say it's judicial estoppel, had they had shown up and been arguing here today. That's exactly our point that we'd be arguing. You cannot have it both ways. It's one or the other. And, therefore, we respectfully request that the Court reverse the decision below and remand this case for a further evidentiary hearing before the District Court of Hawaii. Thank you, Your Honor. Thank you, Mr. LaFleur. We'll take the case under advisory. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.